Linda M Tirelli, Esq.
50 Main Street, Suite 405
White Plains, NY 10606
(914)732-3222
LTirelli@TW-LawGroup.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

-----------------------------------------X

In Re: MIA DEROSA,            CHAPTER 13

      DEBTOR.            CASE NO. 18-23083(RDD)

-----------------------------------------

STATEMENT IN OPPOSITION TO WELLS FARGO BANK NA'S
OBJECTION TO DEBTOR'S REQUEST FOR LOSS MITIGATION

NOW HERE COMES the Debtor Mia Derosa, through her Attorney of Record, Linda M Tirelli, Esq., and does hereby oppose the objection of Wells Fargo Bank, NA, to the Debtor's request for participation in the court's loss mitigation program.  As set forth below, Wells Fargo Bank, NA, a national mortgage industry behemoth with a deplorable record of lying, cheating, and committing fraud on courts and homeowners alike, publicly admitted - less than 2 weeks ago - in an SEC filing that it maintained a flawed computer system and had sustained a long history of wrongfully denying loan modifications to homeowners throughout the height of the mortgage crisis.  For years prior to the instant bankruptcy case, the Debtor, Mia DeRosa, has been at the mercy of Wells Fargo to provide her with the assistance vital to keeping her home and has been met with nothing but constant abuse.  It is par for the course that Wells Fargo now wants to rely on its record of abuse and previous denials, as if the determinations were trustworthy, to sustain its position that it should not have to work with the Debtor in this bankruptcy case in a court supervised program to resolve its mortgage claim.  The Debtor hereby opposes Wells Fargo's objection and in support of her opposition.  The Debtor avers as follows:

1. On or about February 7, 2006, the Debtor took out a mortgage loan known as a "Pick-A-Pay" loan in the amount of $650,000.00 with the now defunct, World Savings Bank FSB.

2. According to the online FDIC public records, certain assets of World Savings Bank, FSB, were sold to Wachovia Bank, NA, on or about October 12, 2007.

3. Also, according to FDIC online public records, Wachovia Bank, NA merged with and became part of Wells Fargo Bank, NA on or about November 1, 2009, the same date that

1

Wachovia Bank, NA was renamed as " NORTH LAS VEGAS BRANCH" and operated as part of Wells Fargo Bank, NA.

4. According to public records, North Las Vegas Branch closed as an institution on or about March 19, 2010.

5. Based upon information and belief, at the time World Savings Bank FSB was underwriting "Pick a Pay" loans, nearly all were written for the purpose of funding and being sold into mortgage backed securities, some of said securitized trusts were managed and maintained by World Savings Bank FSB.

6. By the time Wachovia acquired assets of World Savings Bank, FSB, it is believed that the assets remaining consisted of mere servicing rights and not necessarily ownership of individual mortgage notes.

7. By the time Wells Fargo acquired assets of Wachovia, changed its name to North Las Vegas Branch, the most Wells Fargo (or some subsidiary) could have acquired of World Savings Bank, FSB's, assets would, not have been more than what Wachovia Bank could have acquired from World Savings Bank, FSB, ie., largely servicing rights.

8. The Debtor is a business woman who owns a number of rental properties, most with little or no mortgages.[1]

9. The Debtor has in the past applied for loan modifications on her own, with little or no help, from competent counsel. In that process, the Debtor has been at the constant mercy of Wells Fargo to "do the right thing" and properly assess her applications according to

---

[1] Opposing counsel is misguided in her assumption that the Debtor's mortgages indicated with zero dollar amounts are anything more than the undersigned's practice of including and notifying all creditors appearing on the Debtors' credit report in the petition of any given case in order to prevent the possibility of under-notifying creditors of the bankruptcy filing. Mortgages in particular are sold and re-sold an a daily basis and it is prudent for any Debtor attorney to include every named servicer, past and present.

2

actual investor guidelines and for all programs available. The Debtor has no faith that this was done and has never been advised as to the different types of programs available or provided the guidelines for each.

10. On August 3, 2018, Wells Fargo Bank, NA, filed a second quarter report with the Security Exchange Commission[2] disclosing the following self-serving statement along with extremely vague short synopsis of an internal review into loan modifications, which were wrongly denied to homeowners who, had applied in good faith. On page 4 of its 2018 second quarter report, Wells Fargo reports as follows:

**Additional Efforts to Rebuild Trust**
Our priority of rebuilding trust has also included an effort to identify other areas or instances where customers may have experienced financial harm. We are working with our regulatory agencies in this effort. As part of this effort, we are focused on the following key areas:
…
**Mortgage Loan Modifications**
An internal review of the Company's use of a mortgage loan modification underwriting tool identified a calculation error that affected certain accounts that were in the foreclosure process between April 13, 2010, and October 20, 2015, when the error was corrected. This error in the modification tool caused an automated miscalculation of attorneys' fees that were included for purposes of determining whether a customer qualified for a mortgage loan modification pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac) and the U.S. Department of Treasury's Home Affordable Modification Program (HAMP).

---

[2] The full 10K Quarterly Report can be viewed at the following weblink:
https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2018/second-quarter-10q.pdf

Customers were not actually charged the incorrect attorneys' fees. As a result of this error, approximately 625 customers were incorrectly denied a loan modification or were not offered a modification in cases where they would have otherwise qualified. In approximately 400 of these instances, after the loan modification was denied or the customer was deemed ineligible to be offered a loan modification, a foreclosure was completed. The Company has substantially completed its internal review, subject to final validation, of mortgages where an attorney fee-related error could have occurred. In second quarter 2018, the Company accrued $8 million to remediate customers whose modification decisions may have been affected by the calculation error.

To the extent issues are identified, we will continue to assess any customer harm and provide remediation as appropriate. This effort to identify other instances in which customers may have experienced harm is ongoing, and it is possible that we may identify other areas of potential concern. For more information, including related legal and regulatory risk, see the "Risk Factors" section in our 2017 Form 10-K and Note 13 (Legal Actions) to Financial Statements in this Report.

11. The Debtor avers that Wells Fargo's claimed mission to "rebuild trust" followed by the results of an "internal review," which supposedly concludes only 625 consumers, were wrongly denied loan modifications (out of a pool of unknown size) is laughable. What was the criteria for pin pointing the alleged 625 loans affected? Was the Debtor's loan included in the internal review? Why? Why not? Who discovered the issue and when? Who conducted the internal review and when? What report was generated to assure the problem was corrected and did not continue into 2016, 2017 or 2018 when the Debtor was denied at least one loan modification despite clear ability to afford her mortgage loan? Why was this issue only revealed in the second quarter of 2018 if it was corrected

4

3 years prior? Does anyone trust Wells Fargo in this case to assess that the Debtor is not qualified for a loan modification?

12. How is it that Wells Fargo claims that only 625 affected loans were discovered between 2010 and 2015 – a five-year period when this very court witnessed and experienced standing room only crowds praying and begging and fighting for loan modifications? Is this 625 a reliable number – how do we know? Should we now trust Wells Fargo? The Debtor avers that finding a mere 625 affected loans, out of the hundreds of thousands, if not millions of loan modifications, processed and denied by Wells Fargo is akin to finding needle in a haystack.

13. The Debtor further avers that an "internal review" of Wells Fargo's bad practices being conducted by Wells Fargo itself and then asking this Debtor to believe it, is like trusting the cookie monster with the keys to the Chips Ahoy factory.[3]

14. The Debtor in the instant case demonstrates substantial, solid, steady income. Unfortunately, as of the date and time of this writing, we have no information as to the identity of which securitized trust actually owns the Debtor's loan; therefore the Debtor has no information about what guidelines are being followed or what programs are available. Wells Fargo is revealing nothing while saying "trust us, we always get it right".

15. If Wells Fargo wants to "rebuild trust," then it ought to start with a fresh application for this Debtor, submitted through competent counsel, in a nationally recognized loss mitigation program with a track record of success, and overseen by a respected federal judge.

---

[3] No offense to the Muppets or Nabisco, both of which the undersigned avers are more trustworthy corporate American brands than Wells Fargo.

16. Wells Fargo, in its effort to rebuild trust, should come clean with this Debtor and offer complete transparency as to the identity of the owner of the Debtor's loan, all loan modification programs available, and provide the guidelines for all available programs.

17. Wells Fargo proves itself, <u>week after week</u>, as not being interested in actually collecting money on non performing mortgage loans and opting instead to do a disservice to its shareholders and take the path of foreclosure causing greater waste of time and money. In this case, the Debtor's schedules, which have been filed with this court, reveal the following about her current financial status:

    a. The Debtor maintains an average monthly household net income of $10,989.99;

    b. The Debtor proposes a budget to include monthly post-petition mortgage payments of $4800.00; and

    c. The net-household income minus the total household expenses leaves the Debtor with consistent monthly disposable income of $3294.99, which is the amount of the monthly plan payment to be paid to the trustee.

18. Clearly, this is a case of an honest but unfortunate Debtor who fell on a period of hardship but is now in a position to afford a modified mortgage loan and achieve a a plan confirmation and ultimate discharge in the bankruptcy court.

19. Why is Wells Fargo, in its mission to rebuild trust, objecting to the real opportunity to make this a performing loan when it has shareholders to answer to?

20. Opposing counsel mentions this is a debt listed as disputed. Of course its disputed! Pick-A-Pay loans are notorious for accounting errors and issues. The above described history of transfers of some of the assets of World Savings Bank FSB leaves many questions about the identity of the actual owner of the Debtor's mortgage loan. Why wouldn't

Wells Fargo want to resolve the dispute over identity of the actual owner and amounts owed in a court ordered and monitored negotiation process as opposed to litigation?

WHEREFORE the Debtor respectfully opposes the Objection of Wells Fargo to the Debtor's request for participation in the court's loss mitigation program. The Debtor respectfully requests the court enter the order for loss mitigation as requested by the Debtor.

Respectfully submitted this the 16th day of August 2018

By: /s/ <u>Linda M. Tirelli</u>
Linda M. Tirelli, Esq.
Tirelli & Wallshein, LLP
Westchester Financial Center
50 Main Street, Suite 405
White Plains, NY 10606
(914)732-3222

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                           Case No.: 18-23083

**Mia Derosa**
                                                                             Chapter 13
                                    Debtors.
-------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK                  )
COUNTY OF WESTCHESTER    )  ss.:

      Melissa Showers, being duly sworn, deposes and says:  I am not a party to the action, I am over 18 years of age and I reside in Westchester , New York.

      On **August 16, 2018,** I served the within:

**Debtor's Opposition to Objection by Wells Fargo
to Participation in Court's Loss Mitigation Program**

upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of same, enclosed in a paid properly addressed wrapper in an official depository under the exclusive care and custody of United States Postal Service within the State of New York via first class mail:

Hon. Robert D. Drain
United Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Krista M. Preuss
Chapter 13 Standing Trustee
399 Knollwood Road
White Plains, New York 10603

Wells Fargo Bank, NA
Shapiro, DiCaro and Barak LLC
Attn: Katherine Heidbrink
One Huntington Quadrangle
Suite 3N05
Melville, New York 11747

/s/ Melissa Showers
Melissa Showers

Sworn to before me this
16th day of August 2018

/s/ Brittany Odze
Brittany Odze
Notary Public, State of New York
Registration #01OD6363131
Qualified in Rockland County
Commission Expires 08/14/2021